## Meszler et ux. v. Van Gorder et al.

*I. Reines Skier*, for plaintiffs.

*L. B. Maxwell*, for defendants.

BODIE, P. J., July 18, 1949.—The present case is an action in equity whereby plaintiffs, Philip M. Meszler and Bernetta Meszler, seek to restrain and enjoin defendants, Ralph Van Gorder, Floyd Bayley, John Doe,

et al., from interfering with the use of a sewer by plaintiffs which is connected to their property in the village of Beach Lake, Berlin Township, Wayne County, Pa.

The preliminary injunction was issued upon a bill filed and bond posted. Hearing was had and briefs filed.

From the evidence submitted to the court we make the following

*Findings of Fact*

1. Plaintiffs, Philip M. Meszler and Bernetta Meszler, are husband and wife, residents of Berlin Township, Wayne County, Pa., and are the owners of a summer hotel, known as "Bernadette Lodge", in the Village of Beach Lake, in Berlin Township.

2. Defendants, Ralph Van Gorder and Floyd Bayley, are residents of Berlin Township, Wayne County, Pa., and are officers of a group of persons who organized for the purpose of fostering the construction of a sewer project for the Village of Beach Lake.

3. That, in 1939, the Pennsylvania Department of Health notified some of the owners of summer hotels in the Village of Beach Lake that the waters of the lake were being polluted by sewage and that unless this condition was corrected the waters of the lake would be closed for bathing purposes.

4. Meetings were held by residents of Beach Lake and an association organized in which Floyd Bayley was elected president, Ralph Van Gorder, treasurer, and Jennie Barnes Shaw, secretary.

5. As a result of the meetings an engineer, Frank S. Lubrecht, of Hazleton, was engaged by the association to prepare a plan for a sewerage system to care for the Village of Beach Lake.

6. The association met with their engineer and with the Federal authorities to see if Federal aid could be secured under the Works Projects Administration proj-

ects and, after considerable negotiations, the WPA agreed to assist in this project upon condition that it be officially sponsored by the Supervisors of Berlin Township.

7. The Supervisors of Berlin Township signed the application as sponsors for the sewerage project in applying for aid from the WPA, but the supervisors of Berlin Township did not in any manner exercise any control over the project nor assist in any manner, except to lend a few tools and to sign the papers for the application.

8. In response to a subscription made among the parties to benefit by the sewer a sum of $15,919.91 was collected, which money was paid out by the treasurer, Ralph Van Gorder, without any supervision of the supervisors of the township.

9. Work was stopped on the sewer in 1942, because of the refusal of plaintiffs to agree to a right-of-way across their land.

10. In the fall of 1944 a representative of the Pennsylvania Department of Health directed plaintiffs, who were the owners of Bernadette Lodge, to join the sewer and, in compliance with that order plaintiffs did connect their property to the sewerage system.

11. The association which had sponsored the sewerage project had various meetings which were open to the public as well as to members of the association and fixed the following fees for the use of the sewerage system: Large boarding houses serving over 100 persons, $1,500; boarding houses serving between 50 and 100, $1,000; boarding houses serving 50 and less, $500; private homes, $200; public schools, $1,500.

12. All parties using the sewer, with the exception of plaintiffs, have paid or agreed to pay according to the schedule.

13. Plaintiffs refused to pay the assessment of $1,-000, in accordance with the rules and regulations of the

association, and offered as payment the sum of $355, which they claimed was 10 percent of their assessed valuation and the amount which they were to be assessed.

14. On July 24, 1947, the sewer leading to the property of plaintiffs was blocked by unidentified parties, resulting in the backing up of the sewage in the cellar of Bernadette Lodge and endangering the health of more than 100 boarders as well as plaintiffs.

15. The sewer was opened by plaintiffs and an injunction secured before the blockage resulted in any serious damages to the property or any epidemic of sickness.

16. The association is still in debt for the construction of the sewer and the Supervisors of Berlin Township have never assumed any responsibility for the payment of this unpaid balance.

### Discussion

In considering this case we are faced with a novel problem upon which there is little precedent for the court to rely upon. When we have considered all of the testimony in the case, we feel the one question involved is: Was this sewer a township sewer owned and operated by the municipality, Berlin Township?

It is well established fact that the Township Act of May 1, 1933, P. L. 103, prescribes the method by which a township sewerage system may be created.

Clearly, there is no testimony in this case which would indicate that the Supervisors of Berlin Township ever attempted or even contemplated the creation of a township sewer. They did not advertise, as required by law; they assumed no responsibility; they exercised no control or supervision of the project and did none of the things necessary to create a municipal sewer; their only part being to sign the papers as nom-

inal sponsors in order to secure funds from the Federal Government.

It is a matter of general knowledge that during the depression years, in order to create employment, the Government spent vast sums of money on public works and semi-public works and were not too careful in asking questions as to official sponsorship and all of the niceties and details which one might expect. Many projects of a semi-public nature were sponsored in order to give employment and, while there may have been a laxity in the Government making the present grant where the supervisors were not actually constructing a township sewer, that is a matter which we are not called upon to decide in this proceeding.

A group of property owners of Beach Lake gathered together, raised their private funds and organized a sewer association. It was under their sponsorship that the sewer was built. The money was spent by this association, the plans were drawn up by an engineer hired by them and the control and supervision of the work and the operation and maintenance of the sewer has been with this association, who have duly elected officers and held regular meetings.

Plaintiffs during the construction of the sewer refused to grant a right-of-way, which stopped the work by the WPA, and, generally, have been noncoöperative in this worthy community venture. They rely upon certain conditions set forth in a right-of-way that was granted by them April 6, 1942, in which one paragraph of said right-of-way says that the supervisors may assess 10 percent of the assessed valuation of their respective properties. In view of the specific testimony that the association had set forth certain rates to be paid by persons using the sewer, we do not believe that this statement in the grant of right-of-way would be controlling due to the fact that the supervisors did not

assume the building and operation of the sewer and we feel that if plaintiffs, with one of the largest, if not the largest, boarding house in Beach Lake, wish to take advantage of this modern sewerage system they should have to pay the same as others in the association.

A group of public-spirited citizens have taken their time and their money to provide a sanitary sewerage system for the village. Surely, it would be unfair for plaintiffs to have the full use of these facilities without assuming their respective share of the burden.

We, therefore, make the following

### Conclusions of Law.

1. The Beach Lake sewerage system is not a municipal sewerage system or a township sewerage system set up by the legal action of the Supervisors of Berlin Township.

2. The Beach Lake Sewerage system is owned and operated by an unincorporated association comprised of the citizens of Beach Lake, whose properties are served by the sewer; the officers of the association are Floyd Bayley, president; Ralph Van Gorder, treasurer, and Jennie Barnes Shaw, secretary.

3. Plaintiffs, Philip M. Meszler and Bernetta Meszler, may connect their property to this sewer and use the same only upon complying with the rules and regulations of this unincorporated association owning and supervising the sewer and paying the fee which the association has set for the servicing of a property of their capacity.

4. The Supervisors of Berlin Township cannot create a municipal or township sewer by merely sponsoring a sewerage project but must conform with the requirements of the act of assembly governing the creation of a township sewer in order to create a legal township sewer.

*Order*

Now, to wit, July 18, 1949, it is ordered and decreed that the preliminary injunction issued in this case is hereby dissolved at the expiration of 60 days from the date hereof, during which time plaintiffs shall have the opportunity to make such arrangements with the association to secure the service of the sewer or to construct a private sewerage disposal plant.

Costs to be paid by plaintiffs.

This decree to become absolute unless exceptions thereto are filed within 10 days.